NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0172n.06

Case No. 22-5275

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JOSHUA REECE,

  Plaintiff-Appellant,

v.

WILLIAM ANTHONY CAREY, individually,

  Defendant,

SHELBY COUNTY, KENTUCKY, dba Shelby County Detention Center; BOBBY WAITS, individually and in his official capacity as Shelby County Jailer; CHRISTY BAILEY,

  Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED
Apr 19, 2023
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

OPINION

Before: GILMAN, READLER, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** After Joshua Reece was booked into jail, several inmates attacked and seriously injured him at the request of a deputy jailer. A jury awarded Reece significant damages against the deputy jailer who solicited the attack, but the district court granted summary judgment to two other jail officials and to the governmental entity that owns the jail. Reece appeals the order granting summary judgment. For the reasons stated below, we affirm.

I.

On November 18, 2015, law-enforcement officers arrested Reece for shoplifting and took him to the Shelby County Detention Center ("SCDC"). Upon Reece's arrival at SCDC, Deputy Jailer Christy Bailey booked him into the jail. Bailey, relatively new at SCDC at the time, asked Deputy Jailer William Carey, a more experienced employee, for his advice on which cell to place Reece. Carey told Bailey that Reece was his "wife's ex" and recommended cell 317. R. 188-3, PageID 4016–17. Bailey classified Reece as minimum security and, following Carey's recommendation, assigned him to cell 317.

Carey walked Reece to the cell. Once Reece was in his cell, Carey spoke to one of Reece's cellmates, Corey Hopper. Carey told Hopper he did not like Reece and asked Hopper to "take care of" Reece. R. 188-40, PageID 4284. In response to Carey's request, Hopper enlisted other inmates to assault Reece.

Overnight, several detainees awakened Reece and assaulted him over the course of several hours. The inmates repeatedly struck Reece in the head and body. Reece lost consciousness a few times. To conceal Reece's injuries and blood, the inmates took Reece into the shower and changed him into a clean jumpsuit. They attempted to flush the bloody jumpsuit and towels down the toilet. One of the inmates then put Reece into a bed.

Deputy jailers discovered Reece the following evening, removed him from the cell, and took him to the jail's medical clinic. He had multiple facial injuries. At the time, SCDC had a contract with Southern Health Partners, Inc. for inmate medical care. Reece had a visible laceration on his face and a swollen eye. The medical providers checked his neurological responses and started monitoring him with hourly neurological checks. They then placed him in a medical isolation cell.

From November 19 to December 15, 2015, medical providers treated Reece six more times. They also took X-rays twice. The medical providers did not find evidence of an acute facial fracture, but they noted a soft spot on his skull above his eye. Throughout this time, Reece complained of pain and sought additional treatment. At no point did jail officials take Reece to a hospital.

One day after his release from jail, Reece sought medical treatment at a hospital. Reece had a "right frontal sinus fracture and a right superior orbital rim fracture" that required surgery. R. 234, PageID 4924; R. 157-1, PageID 2768. Eventually, Reece was diagnosed with the following ailments resulting from the jail assault: traumatic brain injury, post-concussive headaches, severe major depressive disorder with psychotic features, and posttraumatic stress disorder.

## A.

*Deputy Bailey*. When SCDC hired Bailey in August 2015, she received classroom training for two weeks and then shadowed other deputies, learning how to book inmates. Bailey had previously worked as a corrections officer at a women's prison in 2014 and received training there as well. SCDC classified new inmates upon booking as either minimum, medium, or maximum security. The jail classified inmates based on criminal charges, prior criminal history, and history while incarcerated. SCDC's standard practice was to place new inmates in the least crowded cell with inmates of the same classification.

Despite SCDC's policy of dividing inmates into three categories, Bailey stated to a police investigator that "[a]t this time, there are only two levels of classification, minimum and maximum." R. 188-5, PageID 4042. Bailey's deposition testimony indicates that she might have misunderstood the classification policy as only having minimum- or maximum-security options.

However, the Systematic Assessment of Risk intake form, which Bailey would complete during booking, offered medium security as an option. In fact, Bailey classified a different inmate as "medium" in September 2015, demonstrating that she had some knowledge of the three-category system.[1] R. 194-1, PageID 4424.

**B.**

*Jailer Waits*. Jailer Robert Waits served as Shelby County's elected jailer from 1997 to 2017. In his role as jailer, Waits supervised SCDC's policies and procedures. Southern Health also kept Waits informed of medical issues occurring at SCDC. Waits explained that it was his regular practice to leave it to the discretion of Southern Health's medical providers to decide whether detainees needed treatment outside of SCDC. He testified that he could override Southern Health if it was obvious that someone needed to go to the hospital, but that he had never taken such action. SCDC's policies required Waits to "review all classification assignments daily." R. 188-2, PageID 4006.

Waits's staff informed him that Reece had been assaulted by other inmates. Waits reported the assault to law enforcement. The police investigated and informed Waits of the role Carey played in recruiting inmates to assault Reece. Waits terminated Carey's employment. Waits knew that Reece had been injured and was receiving medical care from Southern Health. At one point, Waits spoke on the phone with Dr. Ronald Waldridge, SCDC's medical director, about Reece's injuries. Waits asked about Reece's condition and they discussed seeking further medical care for Reece.

---

[1] Reece argues that Bailey began classifying inmates by a two-category system in November 2015. There is nothing in the record to support that Bailey changed her practice in November 2015 specifically.

On December 15, 2015, Nurse Heather Neal forwarded a text message between her and Dr. Waldridge to Waits regarding Reece's injuries. Nurse Neal expressed that the "higher ups" were "extremely concerned" that Reece had been "jumped." R. 188-35, PageID 4256, 4258. Dr. Waldridge replied that the "[h]igher ups should have asked [that Reece] be sent [to the hospital] when he was jumped if there was concern. I'm happy with sending to ER (sic), there isn't an X-ray I can order in jail that will let us know everything is fine." *Id*. Nurse Neal also texted Waits that "[t]he x-ray for Reece was normal. Doc (sic) said there wasn't anything he could order here to diagnose him." *Id*.

## C.

Reece brought this action pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights by Waits, Bailey, Carey, Shelby County, and several other defendants. Reece also brought state-law tort claims against the defendants. The district court granted summary judgment to Waits, Bailey, and Shelby County. Carey stipulated liability on Reece's Fourteenth Amendment excessive-force claim. Reece's other claims were either dismissed or settled.

## II.

We review the district court's grant of summary judgment de novo. *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 343 (6th Cir. 2021). Summary judgment is appropriate where there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## III.

On appeal, Reece argues that the district court erred in granting summary judgment to: (1) Waits on his § 1983 deliberate-indifference claim, (2) Bailey on his § 1983 failure-to-protect

claim, (3) Shelby County on his § 1983 claim for failure to train and supervise the deputy jailers who housed inmates, and (4) Bailey and Waits on his state-law tort claims. We address each argument in turn.

**A.**

Reece contends that Waits was deliberately indifferent to his serious medical needs by not sending him for outside testing and medical care. "Pretrial detainees have a right to adequate medical care under the Fourteenth Amendment." *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). The right includes protection from officers who are "deliberately indifferent to an inmate's serious medical needs." *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) (citing *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020)).

"To survive summary judgment on a deliberate indifference claim, a plaintiff must 'present evidence from which a reasonable jury could find that (1) that [the detainee] had an objectively serious medical need; and (2) that [the defendant's] action (or lack of action) was intentional (not accidental) and she either (a) acted intentionally to ignore [the detainee's] serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed to' the detainee." *Id.* (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 597 (6th Cir. 2021)).

It is undisputed that Reece had an objectively serious medical need. *See id.* at 607 ("A serious medical need is one 'that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008))). Thus, only the second element is at issue. To establish this element, a plaintiff must prove "more than negligence but

less than subjective intent—something akin to reckless disregard." *Brawner*, 14 F.4th at 596 (citations omitted).

A reasonable jury could not find that Waits intentionally ignored or recklessly failed to mitigate the risk of Reece's serious medical needs. Waits's culpability must be assessed individually, based on his own conduct and responsibilities. *See Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 317 (6th Cir. 2023) (citing *Greene*, 22 F.4th at 607). And as we have previously explained, a "non-medically trained officer does not act with deliberate indifference to an inmate's medical needs when he reasonably deferred to the medical professionals' opinions." *Greene*, 22 F.4th at 607 (citation and quotation marks omitted). Waits testified that he deferred to medical providers in deciding whether to send Reece for outside testing or to the emergency room. Although Waits could have overridden the medical providers if he thought there was a medical emergency or an obvious need to go to the hospital, there is no evidence indicating that Waits had knowledge of such an emergency or obvious need.

Reece points to text messages forwarded to Waits from Nurse Neal on December 15, 2015, to try to establish Waits's liability, but those text messages do not change the analysis. They only made Waits aware of a conversation between Nurse Neal and Dr. Waldridge wherein Dr. Waldridge said he was "happy" to send Reece to the emergency room and that he could not know if "everything [wa]s fine" using only X-rays. But this does not suggest medical necessity or urgency. Rather, it seems like Dr. Waldridge was willing to permit further testing if others thought it was necessary. Dr. Waldridge did not advise Waits to send Reece to the emergency room or for outside diagnostic testing. Thus, the text messages do not create an inference that Waits knew, or should have known, Reece needed additional testing or an emergency room visit.

Additionally, this is not a situation where Reece was not offered "any basic medical assistance" in a situation where he obviously needed care. *See Helphenstine* 60 F.4th at 317; *see also Griffith*, 975 F.3d at 568 ("[W]here the plaintiff has received some medical treatment, 'federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" (citation omitted)). Reece received multiple doctor and nurse practitioner visits, two X-rays, and repeated neurological checks. Overall, there is no issue of material fact as to whether Waits was deliberately indifferent to Reece's serious medical needs, so Reece's claim fails as a matter of law.

**B.**

Reece argues that Bailey was deliberately indifferent to his safety by violating prison inmate classification and housing policies. Jail officials are obligated to protect pretrial detainees from "violence at the hands of other prisoners." *Westmoreland v. Butler Cnty.*, 29 F.4th 721, 726 (6th Cir. 2022) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). Under § 1983, a pretrial detainee can seek relief against officers who are deliberately indifferent to a significant risk of harm. *Stein v. Gunkel*, 43 F.4th 633, 639 (6th Cir. 2022) (citing *Richko v. Wayne Cnty.*, 819 F.3d 907, 915 (6th Cir. 2016)). Under our post-*Kingsley v. Hendrickson*, 576 U.S. 389 (2015), analysis, we employ a four-prong test to assess pretrial detainee failure-to-protect claims. *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 945 (6th Cir. 2022) (citing *Westmoreland*, 29 F.4th at 729). "Under that test, an officer violates the Fourteenth Amendment when (1) he acts intentionally 'with respect to the conditions under which the plaintiff was confined,' (2) those conditions 'put the plaintiff at substantial risk' of harm, (3) he does not take reasonable steps to abate that risk, and (4) by failing to do so he actually causes the plaintiff's injuries." *Id.* (quoting *Westmoreland*, 29 F.4th at 729).

We must assess Bailey based on her individual actions. *Stein*, 42 F.4th at 640 (citing *Greene*, 22 F.4th at 607). Even if we assume that Reece satisfies the first prong, he has not created a factual dispute for the second prong. Reece suggests that Bailey placed him at risk of harm because cell 317 was overcrowded and she used a two-category classification system, as opposed to the policy jail's three-category system, thus putting him into a cell with "violent medium security inmates." D. 33 at pp. 31–32. But Reece has failed to show how the overcrowding and classification system put him at a substantial risk of harm. *See Davis v. Chorak*, No. 22-1839, 2023 WL 2487339, at *3 (6th Cir. Mar. 14, 2023) (finding that merely alleging that another inmate had a violent history is not enough to show substantial risk; rather there needs to be some indication of a personal risk to the plaintiff). The record does not indicate that anyone in Reece's cell should have been classified as "medium" or "maximum." While jail officials classified Hopper as maximum security in 2014 due to a violent incident, Hopper was later moved back into minimum-security cells because it was typical to reclassify inmates based on their behavior over time.

Further, Reece's bare allegations of overcrowding and Bailey's failure to comply with policy, without more, do not show that he faced a substantial risk of harm. *See Griffith*, 975 F.3d at 579 ("[F]ailure to follow internal policies, without more, [does not] constitute deliberate indifference." (citation omitted)); *Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012) ("[O]vercrowding is not, in itself, a constitutional violation."). In fact, the risk of harm to Reece arose due to Carey soliciting inmates to attack him; not the alleged overcrowding or the security classifications of his attackers.

And even if Reece can satisfy the second prong, he fails at the third. It is not enough that Bailey was negligent because "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Stein*, 43 F.4th at 639–40 (quoting *Kingsley*, 576 U.S. at

396). Reece must prove that Bailey acted with "reckless disregard" in the face of an "unjustifiably high risk of harm." *Id.* at 640 (quoting *Westmoreland*, 29 F.4th at 730). As a matter of law, Reece cannot prove reckless disregard. Bailey classified Reece as minimum security, which all agree was the correct classification. Bailey then selected Reece's cell, even seeking the advice of a more experienced deputy to assist her in choosing the correct cell. This is what a reasonable prison official would do under the circumstances. *See id.* Bailey did not know, and had no reason to know, that Carey would recruit inmates to assault Reece; and Carey's singular comment about Reece having dated his wife was not enough to put her on notice of what would occur. The district court did not err in granting summary judgment to Bailey on Reece's failure-to-protect claim.

## C.

Reece brings a § 1983 claim against Shelby County for failure to train and supervise deputy jailers to ensure that they knew, and complied with, the classification system. This claim arises under *Monell v. Department of Social Services,* 436 U.S. 658 (1978), and is premised on the conduct of Bailey and Waits. A municipality is liable under 42 U.S.C. § 1983 where its official "policy or custom" caused a violation of the plaintiff's constitutional rights. *Monell*, 436 U.S. at 694–95. However, "[i]f no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." *Westmoreland*, 29 F.4th at 731 (quoting *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001)). Thus, because Bailey and Waits did not violate Reece's constitutional rights, Reece's *Monell* claim must fail.

## D.

Finally, Reece brings state-law negligence claims against Bailey and Waits. Bailey and Waits assert that they are entitled to qualified official immunity. Under Kentucky law, "[q]ualified official immunity applies to the negligent performance by a public officer or employee of (1)

discretionary acts or functions . . .; (2) in good faith; and (3) within the scope of the employee's authority." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). Officials performing ministerial acts are not entitled to qualified official immunity. *Id.* The parties in this case disagree about whether Bailey and Waits engaged in discretionary or ministerial functions.

Discretionary acts are those which involve an exercise of judgment or personal deliberation. *Id.* Ministerial acts are those activities which require obedience to orders, or "when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* (citation omitted). "In reality, few acts are ever purely discretionary or purely ministerial." *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010). In making the determination, we look to the "*dominant* nature of the act." *Id.* (emphasis in original).

Booking an inmate is more ministerial in nature than discretionary. Although Bailey had some discretion and used personal deliberation to classify Reece and choose his cell, her actions were in the course of carrying out an absolute, certain duty based on established policies. *See Slone v. Lincoln Cnty.*, 242 F. Supp. 3d 579, 597 (E.D. Ky. 2017) (finding that booking an inmate is a ministerial task under Kentucky law). Bailey had to follow certain set procedures, putting inmates into security categories. The dominant nature of the act was ministerial, even if there were some discretionary components. *See Haney*, 311 S.W.3d at 240–46 (discussing how an act can involve some discretionary components but is ultimately ministerial because an employee was trained to ascertain facts and apply them based on fixed policies). Thus, Bailey is not entitled to qualified official immunity for choosing Reece's cell.

Similarly, Waits's duty to review inmate classifications was absolute and not discretionary. *See Hedgepath v. Pelphrey*, 520 F. App'x 385, 392 (6th Cir. 2013) (observing that under Kentucky

law, "the supervision of employees is a ministerial act when it merely involves enforcing known policies.").

Even though Waits and Bailey are not entitled to qualified official immunity, Reece still must prove their negligence. To make out a negligence claim under Kentucky law, a plaintiff must establish: "(1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the standard by which his or her duty is measured, and (3) consequent injury." *City of Barbourville v. Hoskins*, 655 S.W.3d 137, 140–41 (Ky. 2022) (citation omitted). The third element of "consequent injury" requires both "actual injury or harm to the plaintiff" and "legal causation between the defendant's breach and the plaintiff's injury." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88–89 (Ky. 2003) (citation omitted). Duty is a question of law, whereas breach and injury are questions of fact. *Id.* at 89. Legal causation is a mixed question of fact and law. *Id.*

Under Kentucky law, a jailer has a duty "to exercise reasonable and ordinary care and diligence to prevent unlawful injury to a prisoner placed in his custody, but he cannot be charged with negligence in failing to prevent what he could not reasonably anticipate." *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 479 (Ky. 2006) (quoting *Lamb v. Clark*, 138 S.W.2d 350, 352 (Ky. 1940)). "[T]he duty of ordinary care to prevent [harm] arises only upon the discovery of some fact which would lead a reasonable person to believe there is some likelihood of . . . injury." *Id.* (citation omitted). Additionally, courts assess whether harm was generally foreseeable, not whether "the particular, precise form of injury could be foreseen." *T&M Jewelry, Inc. v. Hicks*, 189 S.W.3d 526, 531 (Ky. 2006).

Bailey and Waits are entitled to judgment as a matter of law because they could not have reasonably anticipated what occurred in this case and, accordingly, they had no duty to prevent it. Reece was not randomly assaulted by his fellow detainees; a jail employee solicited the attack.

Bailey could not have reasonably anticipated that such a result would occur from her classification and placement of Reece.

Further, Waits, in reviewing cell assignments, could not have ascertained that a jailer would solicit prisoners to attack Reece. Thus, because the attack in this case was not reasonably foreseeable, the district court did not err in granting summary judgment to Bailey and Waits on the negligence claims.

IV.

For the reasons stated above, we affirm.