RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0045p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

VERONICA HYMAN, Personal Representative of the
Estate of Deandre Christopher Lipford, Deceased,
                                   *Plaintiff-Appellant*,

          *v.*

CLYDE J. LEWIS, Officer; STATE OF MICHIGAN;
KENNETH ROMANOWSKI, Warden; JOHN DOE,
                                   *Defendants-Appellees*.

No. 21-2607

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:19-cv-11821—George Caram Steeh, III, District Judge.

Decided and Filed:  March 8, 2022

Before:  McKEAGUE, BUSH, and READLER, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  John C. Kaplansky, LAW OFFICE OF JOHN C. KAPLANSKY, PC, Bingham Farms, Michigan, Robert M. Sosin, ALSPECTOR, SOSIN & NOVECK, Bingham Farms, Michigan, for Appellant.  Zachary A. Zurek, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee Lewis.  Samuel Weiss, RIGHTS BEHIND BARS, Washington, D.C., Jennifer Wedekind, AMERICAN CIVIL LIBERTIES UNION, Washington, D.C., Megha Ram, RODERICK & SOLANGE MACARTHUR JUSTICE CENTER, Washington, D.C., David M. Shapiro, RODERICK & SOLANGE MACARTHUR JUSTICE CENTER, Chicago, Illinois, for Amici Curiae.

———————————

**OPINION**

———————————

JOHN K. BUSH, Circuit Judge.   Deandre Lipford died tragically after he overdosed while detained in the Detroit Detention Center.  At the jail that night, Officer Clyde Lewis was in charge of making rounds, but he failed to physically enter the holding area to check on Lipford as required by jail operating procedures.  Veronica Hyman, Lipford's representative, sued Lewis and others, claiming several violations of Lipford's constitutional rights and state law.  The district court granted summary judgment to Lewis, denying Hyman's deliberate-indifference claim.  For the following reasons, we affirm.

**I.**

At around 8:50 p.m. on November 1, 2016, Detroit police officers stopped a vehicle driven by Lipford.  He was wanted on a felony warrant, so he was arrested and taken to the Detroit Detention Center.  That facility is operated jointly by the Detroit Police Department (DPD) and the Michigan Department of Corrections (MDOC).  DPD and MDOC officers searched Lipford at the jail and did not find any contraband on his body.  Jail health staff also asked Lipford whether he was under the influence of drugs or carrying any medication, and he denied both.

Following this questioning, at about 9:48 p.m., officers at the jail placed Lipford in the video-arraignment room, a glass-walled room used to hold multiple detainees awaiting arraignment.  While in the room, Lipford laid down, sat back up, and eventually nodded off.  He slid to the floor at around 11:02 p.m.  Lipford laid on the floor motionless until 2:50 a.m., when a jail employee found him unresponsive.  Employees began CPR, and Lipford was taken to a hospital.  He was pronounced dead at 3:50 a.m. on November 2.  Hospital staff found narcotics, including cocaine, heroin, and fentanyl, concealed in Lipford's rectum.  Because of this finding, the medical examiner ruled Lipford's death an accidental overdose.  Lipford did not disclose that he had concealed drugs in his body at any point during the intake process.  Nor does the record

suggest that any jail employee knew that Lipford possessed the narcotics.  In fact, there is no evidence that Lipford told anyone at the jail that he was concealing drugs.

Lewis was the police officer responsible for making rounds in the jail and checking on the detainees on the night Lipford overdosed.  The jail's operating procedures required that officers conduct rounds every 30 minutes and that they "physically open the cell doors and ensure that those detainees that are assigned to the cell are actually there."  Officers were also required to "check to make sure that every detainee is living and breathing."

Although Lewis ostensibly made his rounds that night, he did not physically enter the video-arraignment room as required.  Instead, he looked through the glass surrounding the room without entering the room or speaking with the detainees.  The practice of avoiding such interaction with detainees was apparently common in the jail because officers were concerned that detainees would become agitated at officers entering the holding areas at night and waking detainees up.  However, this practice not to disturb detainees violated the operating procedures.  So Lewis was suspended without pay for several days.

Hyman, the representative of Lipford's estate, sued the City of Detroit, the DPD, the state of Michigan, the MDOC, and several DPD and MDOC officers, including Lewis.  The district court dismissed the claims against the State of Michigan's entities and supervisors, leaving claims against Lewis, the City of Detroit, and the DPD.  Hyman and Lewis cross-moved for summary judgment, and the district court granted Lewis's motion.  Hyman dismissed her remaining claims and pursues only her claims against Lewis in this timely appeal.

**II.**

We review the district court's grant of summary judgment de novo.  *Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019).  And we affirm the district court if the record "shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[W]e view the factual evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in that party's favor." *Burwell v. City of Lansing*, 7 F.4th 456, 462 (6th Cir. 2021) (alteration in original) (citation omitted).

Pretrial detainees have a right to adequate medical care under the Fourteenth Amendment. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). An officer violates that right if that officer shows "deliberate indifference to [a pretrial detainee's] serious medical needs[.]" *Greene v. Crawford County*, 22 F.4th 593, 605 (6th Cir. 2022) (citing *Griffith v. Franklin County*, 975 F.3d 554, 566 (6th Cir. 2020)).

Following our recent decision in *Brawner v. Scott County*, a plaintiff must show "(1) that [the detainee] had an objectively serious medical need; and (2) that [the defendant's] action (or lack of action) was intentional (not accidental) and [that] she . . . recklessly failed to act reasonably to mitigate the risk the serious medical need posed to [the detainee], even though a reasonable official in [the defendant's] position would have known" of that risk. 14 F.4th 585, 597 (6th Cir. 2021). While *Brawner* is far from clear, we can distill a couple of principles from it. First, *Brawner* left the "objectively serious medical need" prong untouched. *See id.* at 591, 597. Second, under the modified second prong, we know that Hyman must prove "more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* at 596 (citation omitted). And third, we know that the modified second prong asks whether the defendant acted "'recklessly in the face of an unjustifiably high risk' that is either 'known or so obvious that it should be known'" to a reasonable official in the defendant's position. *Britt ex rel. Britt v. Hamilton County*, No. 21-3424, 2022 WL 405847, at *2 (6th Cir. Feb. 10, 2022) (quoting *Brawner*, 14 F.4th at 596–97); *see also Greene*, 22 F.4th at 607.

With those principles in mind, Hyman needed to show that a reasonable officer in Lewis's position would have known that Lipford was potentially concealing drugs, subjecting himself to an excessive risk of harm, and that Lewis's ignoring this risk was objectively reckless. She has not met this burden. First, there is no evidence that a reasonable officer in Lewis's position would have been aware of Lipford's needs. For one, Lipford never suggested to jail staff that he had narcotics in his possession. And no staff member observed Lipford manifesting an overdose while he was at the jail. Further, there were at least three other detainees present in the room when Lipford was discovered, none of whom signaled any concern that there might be something wrong with him. On these facts, we cannot say that a reasonable officer would have had reason to know of Lipford's needs.

Second, Lewis's actions that night were not reckless. Hyman has pointed to no evidence that Lewis intentionally ignored Lipford's needs. She repeatedly notes that Lewis "intentionally" did not check on Lipford every 30 minutes. That is insufficient. Lewis's admitted intentional violation of jail operating procedures does not mean he intentionally ignored Lipford's needs. Hyman also argues that "Recklessnes [sic] equals gross negligence" under Michigan law. She cites Mich. Comp. Law § 691.1407(8)(a): "'Gross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." But this is inapt. On the facts before us, Lewis was at most negligent, not grossly negligent or reckless. His failure to open the doors to the video-arraignment room to check on detainees individually violated operating procedures. When asked why he did not physically enter the arraignment room, Lewis provided several reasons, chief among them that officers did not want to irritate inmates by repeatedly waking them up while they were sleeping. While Lewis's actions might have been imprudent, they do not show that Lewis was acting "in the face of an unjustifiably high risk" that any reasonable officer would have known. Lewis made his rounds, looking into the video-arraignment room and monitoring the inmates inside. He had no reason to know that Lipford had concealed narcotics in his body.

Lewis no doubt violated the jail's operating procedures. But "failure to follow internal policies, without more," does not equal deliberate indifference. *Winkler v. Madison County*, 893 F.3d 877, 891 (6th Cir. 2018); *see also Griffith*, 975 F.3d at 571 (holding that a particular officer's violation of jail policy established "at most, a negligence claim"); *Meier v. County of Presque Isle*, 376 F. App'x 524, 529 (6th Cir. 2010) (noting that awareness of an operating procedure and failure to comply with it "is not a per se constitutional violation"). And even in a post-*Brawner* world, Lewis's violation of the operating procedures does not rise above negligence to become a constitutional violation under the Fourteenth Amendment. *Brawner*, 14 F.4th at 596 (stating that "[m]ere negligence is insufficient" to "establish deliberate indifference in this context").

Hyman also argues that the district court erred in dismissing her state-law claim against Lewis. Not so. Under Michigan law, an officer is immune from tort liability if three conditions are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

Mich. Comp. Laws § 691.1407(2).  At issue is § 691.1407(2)(c).  Gross negligence means "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  *Id*. § (8)(a).  And conduct that is merely *a* proximate cause rather than *the* proximate cause of the injury under § 691.1407(2)(c) is not sufficient; instead, the conduct must amount to "gross negligence that is the one most immediate, efficient, and direct cause of the injury or damage[.]"  *Robinson v. City of Detroit*, 613 N.W.2d 307, 319 (Mich. 2000).

Lewis's actions were not *the* proximate cause of Lipford's death.  Hyman cites *Ray v. Swager*, 903 N.W.2d 366, 373–74 (Mich. 2017), as evidence that Michigan courts have also held proximate cause under § 691.1407(2) to mean *a* proximate cause.  But the Michigan Supreme Court specifically noted in *Ray* that its holding there complied with *Robinson* because, in *Robinson*, there was another more appropriate proximate cause of the injury.  *Id*. at 375.  So too here.  Lipford died of a drug overdose.  And he never suggested during his intake process that he possessed the narcotics.  It is far from clear that even a "prudent" officer would have been able to observe and prevent Lipford's death.  *See Burwell*, 7 F.4th at 478 (holding that a jail officer's negligence was not the proximate cause, under Mich. Comp. Law § 691.1407(2), of a detainee's drug overdose when the detainee "voluntarily ingested a toxic cocktail of drugs and then chose not to disclose that fact to jail staff at the time of his booking, when he was not exhibiting any overdose symptoms").

Finally, Hyman argues that it was "error for [the district] court to simply disregard an administrative regulation without any explanation as to why the regulation does not apply."  She believes that Michigan law's enabling of the MDOC to promulgate operating procedures should mean "more" under *Winkler*.  She also flags her belief that the procedures Lewis violated have the effect of an ordinance and thus should have a greater legal effect than a policy without the effect of an ordinance.  And she questions whether "dereliction of duty," as defined by the

MDOC Employee Handbook, "transcends negligence and establishes the basis for deliberate indifference." But Hyman provides no caselaw to support these claims. That is unsurprising, given that *Winkler* defined "more" as "subjective[] aware[ness] of information from which [the officer] could have inferred a substantial risk to [the detainee's] health [and] . . . reckless disregard to that risk." 893 F.3d at 891–92.

## III.

Hyman has not shown that any reasonable officer in Lewis's position would have known that Lipford's undisclosed, concealed drugs created an "obvious" and unjustifiably high risk of harm. *Britt*, 2022 WL 405847 at *2 (quoting *Brawner*, 14 F.4th at 596–97). Nor has she shown that Michigan tort law supports recovery on Lipford's behalf. For these reasons, we affirm the district court's grant of summary judgment to Lewis.