NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0425n.06

Case No. 23-2098

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>MAJID ALZID,<br><br>    Plaintiff-Appellant,<br><br>v.<br><br>GIZELLE PORTER, et al.,<br><br>    Defendants-Appellees.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>FILED<br>Oct 25, 2024<br>KELLY L. STEPHENS, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN<br><br>O P I N I O N</td></tr>
</table>

Before: MOORE, THAPAR, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Christopher Morgan died of a drug overdose while incarcerated at the Michigan Department of Corrections ("MDOC") Michigan Reformatory. Plaintiff-Appellant Majid Alzid, the personal representative of Morgan's estate, sued corrections officers Gizelle Porter, Jeffery Stokes, Scott Corrion, and two John Doe defendants for violating Morgan's constitutional rights under 42 U.S.C. § 1983 and committing gross negligence under Michigan law. *See* Mich. Comp. Laws § 691.1407(2). A magistrate judge recommended granting summary judgment in favor of Defendants on each of Alzid's claims. Agreeing with a magistrate judge's report and recommendation ("R&R") that Defendants' actions were not deliberately indifferent and did not serve as the proximate cause of Morgan's death, the district court adopted the R&R in full and granted summary judgment in favor of Defendants. We AFFIRM.

I.

A.

On November 2, 2019, Morgan died of "[a]cute toxicity by the combined effects of ethanol and heroin" while imprisoned at MDOC's Michigan Reformatory. At the time of his death, Morgan was housed in unit J-2. Porter was stationed in unit J-2 from 10:00 p.m. on November 1, 2019 to 6:00 a.m. on November 2, 2019. Corrion and Stokes were stationed on different floors of unit J for the same shift.

Porter arrived for her shift around 9:45 p.m. on November 1. Early in Porter's shift, an inmate informed her that Morgan said he was not feeling well after receiving his evening medicine. Porter did not remember interacting with Morgan before this shift. And Morgan never told Porter that he was not feeling well. Porter did not know that Morgan had ever used heroin or any illicit drugs. Nor did she have any information about whether Morgan had used drugs while incarcerated at the Michigan Reformatory, or whether he had used or possessed drugs at the time of his death. Nonetheless, based on the report of Morgan's fellow inmate, Porter resolved to pay special attention to Morgan when she went past his cell during her rounds that night to ensure there was nothing seriously wrong. Porter did not know that Morgan had ingested drugs. And she did not call medical to check on him.

Consistent with standard Michigan Reformatory practice, Porter conducted a radio check and a physical round of Unit J-2 every thirty minutes throughout her shift. Video from MDOC shows that Morgan went to his cell at 9:08 p.m. on November 1 and remained there through the night. The video also shows that Porter conducted fifteen rounds from the start of her shift until 5:32 a.m. on November 2. Another officer made a round at approximately 1:00 a.m. on November 2 while Porter was on a break.

During each of her first fourteen rounds, Porter confirmed by visual observation that Morgan was breathing. Morgan was also snoring loudly throughout the night, leading Porter to believe he was fine. On Porter's fifteenth round, she noticed that Morgan was no longer snoring. The video shows that Porter stopped at Morgan's cell at 5:32 a.m. and attempted to wake Morgan, but Morgan did not respond.

Porter radioed for assistance. Corrion and Stokes, who also had never interacted with Morgan, responded to her call. Corrion and Stokes arrived within minutes of each other from their separate floors. Around 5:38 a.m., they pulled Morgan from his cell and started CPR. Other corrections and healthcare staff arrived in short order to help revive Morgan. Sadly, their efforts were unsuccessful, and Morgan was pronounced dead at 5:58 a.m.

B.

Alzid sued Porter, Corrion, Stokes, and two John Doe defendants pursuant to 42 U.S.C. § 1983 and Michigan law for their conduct during the period leading up to Morgan's death. Specifically, Alzid claims that the defendants acted with deliberate indifference to Morgan's serious medical needs in violation of the Eighth Amendment and that their conduct was grossly negligent under Michigan law and not protected by governmental immunity under Mich. Comp. Laws § 691.1407(2)(c).

Defendants moved for summary judgment on each of Alzid's claims. Defendants claimed they were entitled to qualified immunity for the § 1983 claims and state governmental employee immunity for the gross negligence claims. Alzid countered by moving to deny or alternatively defer ruling on Defendants' motion for summary judgment under Rule 56(d) because Defendants allegedly withheld video evidence in discovery. Fed. R. Civ. P. 56(d).

Magistrate Judge Kent issued an R&R, recommending that the court: (1) grant Defendants' motion for summary judgment; (2) dismiss the case against the two John Doe defendants; and (3) deny Alzid's Rule 56(d) motion. Alzid objected to the R&R on three grounds. Alzid claimed it would be erroneous to grant the motion for summary judgment because Alzid set forth facts that established Porter acted both with deliberate indifference and with gross negligence. Alzid also claimed the magistrate judge erred by focusing on Alzid's conduct in discovery, rather than Defendants' conduct, when considering Alzid's motion under Rule 56(d). The district court overruled Alzid's objections and adopted the R&R in full.

Alzid appeals on two grounds. He first argues that the district court erred in finding that Defendants did not act with deliberate indifference. He also claims that the district court erred in holding that Defendants' gross negligence was not the proximate cause of Morgan's death. Defendants respond that Alzid's only viable claims on appeal are those against Porter because Alzid did not properly object to the magistrate judge's recommendation to dismiss the claims against Corrion, Stokes, and the two John Doe defendants. Thus, he waived those arguments on appeal. For her part, Porter argues that the district court properly granted summary judgment on the claims against her because Alzid points to no evidence in the record that would support the subjective prong of the deliberate indifference inquiry or a finding of gross negligence under Michigan law.

## II.

We first address the proper scope of this appeal. *See Smith v. Detroit Fed. Tchrs., Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Defendants maintain that the only issues before this court are whether the district court erred in terminating Alzid's Eighth Amendment and Michigan-law gross negligence claims against Porter. We agree.

A.

It is well settled that litigants must raise objections to a magistrate judge's R&R or else waive them on appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985) (upholding Sixth Circuit's rule requiring litigants to properly file objections to a magistrate judge's recommendation before they can contest a district court's judgment adopting the magistrate judge's recommendation). "[O]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review." *Smith*, 829 F.2d at 1373; *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596–97 (6th Cir. 2006) (barring appeal of several objections to R&R for failure to specifically object below). This requirement limits appellate review to issues that were adequately considered by the district court. *See Thomas*, 474 U.S. at 147–48; *Smith*, 829 F.2d at 1373–74.

B.

The R&R recommended granting Defendants' motion for summary judgment based on qualified immunity on each of Alzid's § 1983 claims. The magistrate judge concluded that Alzid could not establish the deliberate indifference inquiry's subjective prong against Porter and that Alzid failed to make any allegations or offer any specific evidence pertaining to Corrion's or Stokes's actions during the relevant time period. The magistrate judge also recommended that the two John Doe defendants be dismissed from the action because Alzid failed to identify them after discovery.

Alzid objected only to the recommendations regarding his claims against Porter. Indeed, his objections referenced only Porter by name. And none mentioned any of the specific grounds on which the R&R recommended dismissal of Alzid's claims against the other defendants—i.e., lack of personal involvement as to Stokes and Corrion and failure to identify the John Doe defendants. "[M]aking some objections but failing to raise others will not preserve all the

objections a party may have." *Smith*, 829 F.2d at 1373; *see also Thomas*, 474 U.S. at 148. In objecting to the R&R's deliberate indifference determination solely as to Porter, Alzid failed to preserve any other objections he may have had and waived those arguments on appeal.

C.

The magistrate judge recommended granting Defendants' motion for summary judgment on Alzid's gross negligence claims because Alzid presented no evidence that any of the defendants' actions were the proximate cause of Morgan's death as required by Michigan law. Alzid objected, arguing that he "set forth facts which established Porter acted with gross negligence." (R. 72, PageID 485). This objection, too, only identified and discussed Alzid's claims against Porter. While Alzid loosely referred to "Defendants" at one point in this objection, he cabined his challenge by solely advancing how the evidence demonstrated that Porter was grossly negligent and the proximate cause of Morgan's death. Consequently, Alzid waived his gross negligence claims against the other defendants also. *See Smith*, 829 F.2d at 1373–74 (concluding that failure to object to magistrate judge's recommendation waived argument on appeal regardless of whether the argument was voluntarily considered by the district court).

Because Alzid preserved only his claims against Porter, we will limit our review to Alzid's arguments that the district court erred in granting Porter's motion for summary judgment on his (1) § 1983 deliberate indifference claim, and (2) Michigan-law gross negligence claim.

III.

We review a district court's summary judgment ruling de novo, construing the facts, and drawing all reasonable inferences, in the light most favorable to the non-moving party. *See Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020). Summary judgment is proper when no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The central issue is whether the evidence presents a sufficient disagreement to require submission of Alzid's claims to a jury or whether the evidence "is so one-sided" that Porter must prevail as a matter of law. *See id.* at 251–52. Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e)). A non-movant can establish the existence of such specific facts through affidavits or by the "depositions, answers to interrogatories, and admissions on file." *Id.*

IV.

Government officials are protected by qualified immunity for actions taken within the scope of their authority which do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A plaintiff who brings a § 1983 action against such an official bears the burden of overcoming the qualified immunity defense." *DiLuzio v. Village of Yorkville*, 796 F.3d 604, 608 (6th Cir. 2015). "At the summary judgment stage, the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established." *Id*. We may consider these requirements in the order of our choosing. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, Alzid has failed to meet the first requirement, so we forgo consideration of the second.

A prison official may not be held liable under the Eighth Amendment for failing to provide adequate assistance for an inmate's serious medical need unless the inmate can show that the prison official acted with "deliberate indifference." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018)

(citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). To prove deliberate indifference, a prisoner must point to evidence that "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Such deliberate indifference to an inmate's medical needs constitutes cruel and unusual punishment under the Eighth Amendment. *Rhinehart*, 894 F.3d at 736–37.

A deliberate indifference claim has two parts: (1) "an objective component—a 'sufficiently serious medical need;'" and (2) "a subjective component—a 'sufficiently culpable state of mind.'" *Griffith v. Franklin County*, 975 F.3d 554, 567 (6th Cir. 2020) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004)). To succeed on his Eighth Amendment claim, Alzid must present sufficient evidence to show a genuine dispute of material fact on both prongs of the inquiry. *See id.* at 567–68.

A.

An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (cleaned up). We have routinely held that "a condition resulting in death is 'sufficiently serious' to meet the objective component." *Burwell v. City of Lansing*, 7 F.4th 456, 463–64 (6th Cir. 2021) (listing cases). Here, Morgan died from "[a]cute toxicity by the combined effects of ethanol and heroin." (R. 53-5, PageID 258). And Defendants do not contest whether the objective prong was met here. We therefore accept that there is sufficient evidence to conclude that Morgan was suffering from a "serious medical need" at the time of his death.

B.

To satisfy the second prong, Alzid must show that Porter acted or failed to act with a mental state "equivalent to criminal recklessness." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013). Criminal recklessness "must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Id.*

Under *Farmer*, Alzid was required to demonstrate that Porter was "both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also dr[e]w the inference." 511 U.S. at 837. This inquiry can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result," *id.* at 835, but "[k]nowledge of the asserted serious medical needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference," *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012) (quoting *Blackmore*, 390 F.3d at 896).

Alzid's claim fails on the subjective prong of the inquiry. He has offered no evidence that Porter knew of facts from which to infer a substantial risk of harm to Morgan and declined to act on them. Alzid primarily cites allegations contained in his complaint. He draws our attention to the deposition testimony of a fellow inmate discussing the overdose death of a third inmate. But this evidence is not properly before us as it was neither presented to nor considered in the district court. *See Cash-Darling v. Recycling Equip., Inc.*, 62 F.4th 969, 976 (6th Cir. 2023) (holding that facts not "marshalled in support of or in opposition to the summary-judgment proceeding below" may not be considered by the reviewing court on appeal). When the moving party has met her burden of showing that no genuine dispute of material fact exists, the non-movant cannot rest on

pleadings to establish that a genuine dispute of material fact does exist. *See Anderson*, 477 U.S. at 248–49; *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009).

The undisputed facts in the record establish that Porter had no information about Morgan's prior drug usage while incarcerated or otherwise and that she did not know where he got the drugs that caused his death. In fact, Porter did not remember ever having interacted with Morgan before November 1, 2019. Porter also did not know that Morgan had ingested drugs. Her only knowledge about Morgan's health came from another inmate who told her that Morgan "wasn't feeling well after he took his meds." (R. 53-2, PageID 247–48). Morgan said nothing to Porter about how he felt. Even were we to conclude that Porter was negligent for not calling for medical assistance upon learning that Morgan felt unwell—a question for which we express no opinion—mere negligence is insufficient to establish an Eighth Amendment violation. *Farmer*, 511 U.S. at 835; *see also Rhinehart*, 894 F.3d at 751.

Moreover, in response to the report from Morgan's fellow inmate, Porter took action; she kept a close eye on Morgan, confirming he was breathing as she made fifteen rounds in Morgan's cellblock. In addition to visually observing Morgan's breathing, she also noted that he was snoring loudly all night. Porter did not notice Morgan showing any signs of distress, and no one advised her that he was experiencing any symptoms of drug overdose. Alzid claims that Morgan was suffering from blurred vision, which he insists is a known sign of drug overdose. However, he presents nothing to support this point. And even assuming that blurred vision is a common sign of overdose, Alzid points to no evidence that Porter knew (1) that Morgan had blurred vision or (2) that blurred vision was a sign of overdose. To the contrary, the record evidence shows that Porter was unaware of Morgan's blurred vision. When Porter recognized that Morgan was not

snoring on her fifteenth round, she opened his cell and attempted to wake him. And when Morgan did not respond, Porter radioed for help.

At no point in this series of events did Porter's actions demonstrate that she perceived Morgan to have a serious medical need that she then ignored when she checked on him throughout her shift. To the contrary, once Porter detected a potential risk of harm, she acted to help. The evidence presented does not support Alzid's assertion that Porter was subjectively deliberately indifferent to Morgan's medical problems. Alzid has not provided anything beyond the allegations in his complaint, which are not evidence and cannot be used to overcome Porter's evidence showing she did not know and had insufficient facts from which to infer that Morgan was suffering from a drug overdose.

The supposition that Porter could have done more is insufficient to sustain Alzid's claim. *See Whitley*, 475 U.S. at 319. Because Alzid presented no evidence to dispute the series of events portrayed in the record, Porter is entitled to qualified immunity and judgment in her favor as a matter of law.

V.

Under Michigan law, a government official acting in the scope of her duty is immune from tort liability when, as relevant here, her "conduct does not amount to gross negligence that is the proximate cause of the injury or damage." Mich. Comp. Laws § 691.1407(2). "[T]he proximate cause" as used in § 691.1407(2) "means the one most immediate, efficient, and direct cause preceding an injury, not 'a proximate cause.'" *Robinson v. City of Detroit*, 613 N.W.2d 307, 311 (Mich. 2000); *see also Beals v. Michigan*, 871 N.W.2d 5, 7 (Mich. 2015).

Alzid argues that a genuine dispute of material fact remains as to whether Porter's actions (or lack thereof) were the proximate cause of Morgan's death. Yet again, Alzid relies only on the

allegations made in his pleadings. This is not sufficient to genuinely dispute Porter's proffered evidence demonstrating that she was not the proximate cause of Morgan's death. *See Moldowan*, 578 F.3d at 374.

It is undisputed that Morgan died from a drug overdose. There is no evidence showing that Porter—or any of the other named defendants for that matter—gave Morgan the drugs that caused his overdose, or even knew he had consumed drugs.[1] The "one most immediate, efficient, and direct cause" of Morgan's death was his voluntary consumption of ethanol and heroin. *Robinson*, 613 N.W.2d at 311. Alzid has provided no evidence from which a jury could conclude otherwise.

Our recent decisions support this conclusion. In *Burwell v. City of Lansing*, Phillips, a pretrial detainee, was discovered in his holding cell unconscious, lying in a pool of his own vomit, three hours after he was booked into Lansing City Jail. 7 F.4th at 460. He was pronounced dead from a drug overdose. *Id.* His estate sued under § 1983 and a Michigan-law gross negligence theory. *Id.* at 462. We affirmed the district court's grant of the defendants' motion for summary judgment on the gross negligence claim because Phillips's estate could not prove that the defendants' actions were the proximate cause of his death. *Id.* at 478. Because Phillips "voluntarily ingested a toxic cocktail of drugs and then chose not to disclose that fact to jail staff at the time of his booking, when he was not exhibiting any overdose symptoms[, n]o reasonable jury could find that [any of the defendants'] negligence" was the proximate cause of Phillips's death. *Id.*

Similarly, in *Hyman v. Lewis*, Deandre Lipford, a pretrial detainee at the Detroit Detention Center, died of a drug overdose seven hours after being arrested. 27 F.4th 1233, 1235–36 (6th Cir.

---

[1] Even if Alzid's claims against Corrion and Stokes were not waived for failure to object below, the proximate-causation analysis would apply equally to them. Thus, Alzid's Michigan-law gross negligence claims against each of them would fail for lack of proximate cause as well.

2022). Lipford's estate sued. *Id.* at 1236. We affirmed the district court's grant of summary judgment in favor of the defendants on the plaintiff's gross negligence claim for primarily the same reason as in *Burwell*: Lipford's estate could not prove that the defendants' conduct was the proximate cause of Lipford's death. Lipford did not alert the officers at the jail that he had narcotics concealed in his body during the intake process, nor did he tell any jail employee he possessed narcotics at any point while he was detained. *Id.* at 1236, 1239. The proximate cause of Lipford's death was a drug overdose. *Id.* at 1239.

As in both *Burwell* and *Hyman*, Morgan did not inform Porter that he had ingested any drugs. Alzid provides no evidence from which a jury could conclude that Porter was aware Morgan was overdosing and failed to act. Because Morgan's actions were the proximate cause of his death, Porter is entitled to judgment as a matter of law.

VI.

For the reasons above, we **AFFIRM** the judgment of the district court.