NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0152n.06

No. 24-1767

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 18, 2025
KELLY L. STEPHENS, Clerk

PETER GUMM,                                    )
                                               )
        Plaintiff-Appellant,                   )
                                               )        ON APPEAL FROM THE
v.                                             )        UNITED STATES DISTRICT
                                               )        COURT FOR THE EASTERN
AK STEEL CORPORATION,                          )        DISTRICT OF MICHIGAN
                                               )
        Defendant-Appellee.                    )                OPINION
                                               )
                                               )

Before: THAPAR, BUSH, and MURPHY, Circuit Judges.

**BUSH, Circuit Judge.** After an internal investigation uncovered significant evidence of inappropriate workplace conduct, AK Steel Corporation terminated Peter Gumm's employment. Gumm then brought this suit, claiming AK Steel retaliated against him because he opposed racial discrimination. The district court granted summary judgment in favor of AK Steel. We **AFFIRM.**

**I.**

**A.**

In 2015, AK Steel hired Gumm as a manager at its factory in Dearborn, Michigan. Two years later, the company promoted Gumm to another managerial position, where he supervised lower-level managers and hourly employees.

Gumm's troubles began in late 2018 or early 2019. After a town hall meeting, several employees approached LaDale Combs, one of Gumm's supervisors, and complained about Gumm's conduct. They claimed Gumm struggled to communicate well and treated employees unfairly. Soon thereafter, a union representative requested a meeting with Combs to discuss

complaints against Gumm lodged by hourly employees. The complaints included unfair work assignments, lack of communication, and favoritism. Employee complaints continued throughout 2019. In annual surveys, workers criticized Gumm's management style and treatment of coworkers. One supervisor later recalled conducting numerous informal discussions with Gumm that were triggered by "constant complaints" about the way Gumm treated subordinates and other supervisors. Gibbons Deposition, R. 34–3, PageID 386.

By summer, the barrage of complaints led Gumm's direct supervisor, Jason Dearth, to hold a formal meeting to discuss Gumm's workplace conduct. When met with renewed concerns about his behavior, Gumm raised accusations of his own. He complained that AK Steel recently hired two new white supervisors instead of a black female employee, whom Gumm viewed as the most qualified candidate. Gumm also complained about the "bad" "optics" created by AK Steel's rehiring of one white employee who was previously terminated for being intoxicated at work. Gumm Deposition, R. 34–2, PageID 345. Two black employees were terminated for the same conduct but were not rehired at the same time, though they were reemployed later.

After Gumm's complaints about AK Steel's employment practices, the complaints about his own workplace behavior continued. In early November 2019, one of AK Steel's executives initiated another investigation into Gumm's conduct after one of Gumm's subordinates explained in an exit interview that he was leaving because of Gumm's abusive tactics. The subordinate detailed Gumm's hostile management style and said Gumm often called employees "dumb" and "stupid." Nowitzke Exit Interview, R. 34–11, PageID 717. In response, AK Steel issued a written reprimand to Gumm regarding his "disrespectful treatment" of other employees. Nov. 2019 Reprimand, R. 34–12, PageID 719. The reprimand noted Gumm's behavior had been documented in numerous yearly employee surveys, exit interviews, and verbal complaints. And it warned that

any future inappropriate behavior would not be tolerated and could "result in further discipline up to and including termination of [Gumm's] employment." *Id.*

Matters did not end there. In late November 2019, an anonymous caller lodged a complaint against Gumm on the company's ethics and compliance hotline. The caller accused Gumm of creating a hostile work environment by belittling employees and referring to them by several derogatory terms. The complaint also asserted that Gumm "does not like African American employees," that he "would like to keep all supervisors Caucasian," and that, in light of Gumm's comments, the caller felt they "would never be able to become a supervisor due to the color of [their] skin." Hotline Compl., R. 34–14, PageID 724.

In response to the hotline complaint, AK Steel launched a month-long investigation into Gumm's workplace conduct. Although "[t]he investigation did not corroborate the specific allegations brought forth in the complaint," it did unearth additional "evidence of unprofessional and disrespectful" workplace conduct by Gumm. *Id.* at 723. Hourly workers did not report untoward behavior when the company interviewed them during the investigation. But four out of the five shift managers who reported to Gumm raised serious concerns. The shift managers reported numerous instances of Gumm making racist, sexist, demeaning, and abusive comments to subordinates. Though Gumm contested the allegations, he later stated that he had no reason to believe any of the shift managers would lie to AK Steel's internal investigators. Nor did he claim knowledge of any unethical conduct that took place during the investigation. In January 2020, citing the results of the internal investigation, AK Steel terminated Gumm's employment.

**B.**

Following his termination, Gumm filed this lawsuit, bringing four employment discrimination claims against AK Steel. First, he claims that AK Steel sought to punish him for

reporting racial discrimination by instituting its investigation into his workplace behavior. Gumm claims the investigation created a hostile work environment in violation of both Title VII of the Civil Rights Act and Michigan's Elliott-Larsen Civil Rights Act (ELCRA). Second, he claims AK Steel terminated his employment in violation of Title VII and the ELCRA because of his opposition to racial discrimination.

Following discovery, the district court granted AK Steel's motion for summary judgment. As to the claims surrounding the investigation, the district court held that Gumm failed to demonstrate that the investigation amounted to the severe or pervasive harassment required for a retaliatory hostile work environment claim. Nor, in the court's view, did Gumm identify sufficient evidence for a jury to conclude the investigation was causally connected to his purported opposition to racial discrimination months earlier.

Gumm's claims stemming from his termination fared no better. He did not dispute that AK Steel carried its burden to provide legitimate, nondiscriminatory reasons for his termination—that it terminated Gumm for being abrasive to fellow employees and making derogatory comments about women and employees of color. And, in the court's view, Gumm did not identify sufficient evidence from which a reasonable juror could conclude those reasons were pretextual.

## II.

In his timely appeal, Gumm maintains the district court erred in granting summary judgment in favor of AK Steel on all of his claims. We review the district court's grant of summary judgment de novo, *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022), and will affirm if "there is no genuine dispute as to any material fact" and AK Steel is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(a). In undertaking our review, we view the facts in the light most favorable

to Gumm and draw all reasonable inferences in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.

Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed" racial discrimination in employment. 42 U.S.C. § 2000e–3(a).[1] As relevant here, an employer can discriminate against an employee because of his opposition to discrimination in two basic ways. First, the employer can discriminate by taking a traditional adverse employment action, like termination. Second, the employer can discriminate by subjecting an employee to severe or pervasive harassment. *See Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000).

Gumm pursues claims under both theories. As an initial matter, he maintains that his termination constituted discrimination in violation of § 2000e–3(a). He also claims AK Steel subjected him to the internal investigation (which ultimately led to the termination of his employment) because he opposed racial discrimination. That investigation, Gumm argues, was so unreasonable that it constituted severe and pervasive harassment. We address each argument in turn.

## A.

Start with Gumm's termination claims, which follow the familiar *McDonnell Douglas* framework. Gumm must first prove that 1) he opposed racial discrimination, 2) AK Steel was aware of his opposition, 3) AK Steel terminated his employment, and 4) there was a causal

---

[1] We need not separately analyze Gumm's ELCRA claims because, at least as to the elements we discuss below, "the ELCRA analysis is identical to the Title VII analysis." *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012). That means AK Steel is entitled to summary judgment on Gumm's state-law claims for the same reasons it is entitled to summary judgment on the Title VII claims.

connection between his opposition to discrimination and the termination. *Morris*, 201 F.3d at 792. If Gumm carries his initial burden, then AK Steel must articulate some legitimate, nondiscriminatory reason for its termination decision. *Id.* at 792–93. If it does, then Gumm must create at least a genuine dispute that AK Steel's proffered reasons were pretextual. *Id.* at 793. We agree with the district court that, even assuming Gumm establishes his prima facie case, he lacks evidence sufficient to create a jury issue on pretext.

Gumm must point to sufficient evidence from which a reasonable juror could conclude that the employer's proffered reasons were not the real reasons for the termination. *See Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009). We have held that a plaintiff can carry that burden by showing "1) that the proffered reasons had no basis in fact, 2) that the proffered reasons did not actually motivate the employer's action, or 3) that they were insufficient to motivate the employer's action." *Romans v. Mich. Dep't of Hum. Servs.*, 668 F.3d 826, 839 (6th Cir. 2012) (citation omitted). None is present here.

As an initial matter, not even Gumm suggests that the behavior reported to AK Steel by his coworkers is insufficient to motivate a termination. In fact, the reports of racist and sexist comments arguably compelled AK Steel to take significant action to avoid its own Title VII liability. *See Jackson v. Quanex Corp.*, 191 F.3d 647, 659, 662–66 (6th Cir. 1999).

Nor is there a genuine dispute that AK Steel's proffered reasons lacked a basis in fact. The record is filled with complaints about Gumm's treatment of fellow employees, complaints that span an extended period. Although Gumm takes issue with certain aspects of the investigation into his conduct, he admitted that he had no reason to believe that the persons reporting his behavior had reason to lie. And as the district court correctly concluded, Gumm certainly cannot show that AK Steel did not reasonably believe that there was some truth underlying the wave of

allegations from multiple sources across an extended period of time. *See Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530–31 (6th Cir. 2012); *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598–600 (6th Cir. 2007).

Nor has Gumm created a genuine dispute that the proffered reasons did not actually motivate the termination. He points to the temporal proximity between his complaints about AK Steel's employment decisions and his termination. But we have long held that temporal proximity alone cannot establish pretext, unless the plaintiff also points to other, independent evidence. *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 516 (6th Cir. 2021); *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001). And Gumm points to no such evidence here. He claims to have been "a high-performing employee with no prior negative evaluations until he began reporting discrimination." Opening Br. at 15. But the very same performance evaluations he relies upon also note his "harsh" and "abrasive" treatment of coworkers. Performance Evaluation, R. 34–8, PageID 568–69. In addition, Gumm points out that AK Steel did not corroborate the specific allegation raised in the November 2019 hotline complaint. But it is undisputed that the investigation of that complaint uncovered numerous reports from supervisors of other inappropriate behavior by Gumm, which were consistent with numerous complaints that preceded the anonymous complaint.

All told, Gumm fails to identify evidence from which a reasonable juror could conclude that his abrasive treatment of fellow employees and derogatory comments about women and employees of color were not the real reasons for his termination. So, the district court correctly concluded AK Steel was entitled to summary judgment on Gumm's retaliatory termination claims.

**B.**

His retaliatory hostile work environment claims fare no better. Those claims also track the *McDonnell Douglas* framework and require Gumm to first establish that 1) he opposed racial discrimination, 2) AK Steel was aware of his opposition, 3) AK Steel's investigation constituted severe or pervasive harassment that would dissuade a reasonable worker from opposing racial discrimination, and 4) there was a causal connection between his opposition and the investigation. *See Morris*, 201 F.3d at 792. Like the termination claims, the burden then shifts to AK Steel to articulate some legitimate, nondiscriminatory reason for its investigation, before then shifting back to Gumm to demonstrate that AK Steel's proffered reasons were pretextual. *Id.* at 792–93.

The district court correctly concluded that Gumm's hostile work environment claims fail at the prima facie stage. Recall that the only action Gumm claims created a hostile work environment is AK Steel's investigation into his alleged misconduct. But he identifies nothing unusual about the investigation that would rise to the level of severe or pervasive harassment. *Cf. Khamati v. Sec'y of Dep't of the Treasury*, 557 F. App'x 434, 443 (6th Cir. 2014). Indeed, as we've explained, Title VII may have *required* AK Steel to investigate Gumm's workplace conduct after it received numerous complaints about his workplace conduct. *See Jackson*, 191 F.3d at 659, 662–66. That is because employers have an affirmative duty to prevent or remedy discrimination on the basis of race or sex in the workplace. *Faragher v. City of Boca Raton*, 524 U.S. 775, 806–08 (1998). In such circumstances, no reasonable juror could conclude that AK Steel's investigation into workplace discrimination created severe or pervasive harassment that would reasonably deter an employee from opposing racial discrimination.

Gumm's arguments to the contrary are unconvincing. As an initial matter, he appears to suggest that *any* investigation into his reported misconduct would constitute severe or pervasive

harassment because it was based on "unsubstantiated" allegations. Opening Br. at 21. But even viewing the facts in the light most favorable to Gumm, AK Steel's initial investigation into his misconduct was conducted after multiple complaints from various sources. Nor could a reasonable juror find AK Steel's reaction to the November 2019 hotline complaint to objectively constitute severe or pervasive harassment. While the hotline complaint was anonymous, it was consistent with prior complaints about Gumm's misconduct that AK Steel previously felt compelled to address. Finally, Gumm claims severe or pervasive harassment could be inferred from the fact that prior complaints about his behavior were never communicated to him. But his supervisors testified to conducting numerous informal discussions with him, all of which were triggered by "constant complaints" about the way he treated subordinates and other supervisors. Gibbons Deposition, R. 34–3, PageID 386. And Gumm points to no specific evidence in the record rebutting those representations. *See* Fed. R. Civ. P. 56(c)(1)(A). Given Gumm's failure to identify sufficient evidence to establish an essential element of his claims, the district court correctly granted summary judgment to AK Steel on the hostile work environment claims.

**IV.**

For these reasons, we affirm the district court's judgment.